***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between Plaintiff-Employee and Defendant-Employer.
3. Defendant-Employer was insured for workers' compensation coverage at all relevant times.
 ***********
Based upon the foregoing Stipulations and the evidence presented, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, Plaintiff was 41 years old. He has a ninth grade education and is functionally illiterate. Plaintiff's prior work experience involved very heavy lifting, climbing, twisting, bending, and squatting. On April 8, 1994, Plaintiff suffered a back injury at an earlier employment. As a result of his injury, Plaintiff underwent a right L4 laminectomy and right L5 hemilaminectomy by Dr. Frank Brown on September 6, 1994. Dr. Brown assigned Plaintiff a 15% permanent partial disability rating to his back and permanent restrictions of no lifting greater than fifty (50) pounds and no frequent lifting of more than twenty-five (25) pounds.
2. On April 6, 1995, the South Carolina Workers' Compensation Commission awarded sixty thousand dollars ($60,000) in compensation to Plaintiff for the April 8, 1994 work-related injury to his back.
3. Following the South Carolina workers' compensation award, Plaintiff obtained a medical release to return to work from Dr. Brown. Plaintiff was hired by Defendant-Employer and submitted to Defendant-Employer's July 17, 1995 pre-employment physical exam by Physician Assistant Steve Langefeld. During the thirty-minute exam, Plaintiff told Mr. Langefield about his prior back surgery. Mr. Langefeld documented Plaintiff's back surgery in his written report to Defendant-Employer.
4. Based on the physical exam and medical release by Dr. Brown, Defendant-Employer hired Plaintiff to work as a laborer in 1995. Although Plaintiff responded "no" to questions concerning whether he had missed time from work due to an injury in the past 5 years, he disclosed his prior back surgery to the physician assistant who examined him at the request of Defendant-Employer. In addition, Plaintiff discussed and actually showed his supervisor, Joey Blackwell, the surgical scar from his 1994 back surgery early in his employment with Defendant-Employer.
5. Plaintiff was employed by Defendant-Employer from 1995 to 2002 in a variety of labor jobs associated with road paving. His job responsibilities involved heavy lifting and other very physically demanding duties. Plaintiff was capable of doing all physical requirements of each job he performed during his more than 6½ years of employment with Defendant-Employer. Plaintiff did not miss any work nor request any accommodation for back problems during the time he worked for Defendant-Employer prior to July 5, 2001.
6. While Plaintiff sought treatment for back pain from a local health clinic and Blue Ridge Bone and Joint in early 2001, no medical provider ever wrote Plaintiff out of work for his symptoms.
7. On July 5, 2001, Plaintiff was working as an asphalt screed operator. The asphalt screed operator position required stretching, bending, pushing, pulling, twisting, throwing, walking, standing, reaching and squatting. The job further required the regular lifting of 25 pounds and occasional lifting of up to 100 pounds. Plaintiff used a shovel and hand or motorized tamp while performing his duties. Overtime work was required and walking and standing each occupied approximately 50% of Plaintiff's workday.
8. On July 5, 2001, Plaintiff suffered an injury to his back while working as an asphalt screed operator. Plaintiff was turning a crank on the paving machine he operated and felt something pull in his back. Plaintiff felt immediate back pain and complained to his supervisor, Joey Blackwell, about the injury on July 5, 2001.
9. On July 6, 2001, Plaintiff sought medical care from Dr. Brown and was given steroid injections to ease his back pain. Dr. Brown continued this injection treatment for several months while he took Plaintiff out of work due to his back injury.
10. After determining that the injections were not effective, Dr. Brown performed an L5-S1 laminectomy, disk decompression and foraminotomy surgery on Plaintiff on November 15, 2001.
11. Plaintiff requested a medical release from Dr. Brown at the start of the 2002 paving season. Dr. Brown gave Plaintiff a medial release without restrictions allowing him to begin paving work effective March 4, 2002, even though Dr. Brown believed the release was premature and Plaintiff might reinjure himself. Dr. Brown testified that he told Plaintiff his 1995 restrictions of lifting no more than 25 pounds frequently and 50 pounds occasionally were permanent and could never be lifted. Plaintiff's actual work for Defendant-Employer resumed on March 25, 2002. He did light work for 3 days.
12. On March 28, 2002, Plaintiff suffered another injury when he twisted his back while stepping off the screed machine. He told his supervisor, Mr. Blackwell, that his back was sore, but finished working that day. Dr. Brown took Plaintiff out of work when he treated him several days later.
13. Plaintiff's March 28, 2002 and July 5, 2001 injuries materially aggravated his pre-existing back condition and prevented him from returning to work for Defendant-Employer or in any other employment.
14. As of the date of hearing before the deputy commissioner, Plaintiff's back pain prevented him from lifting, getting proper sleep and performing regular activities.
15. Raymond Stapleton, a friend of Plaintiff, and Gail Roberts, Plaintiff's sister, testified that after his July 5, 2001 injury, Plaintiff required assistance with yard work and household chores that he was able to do previously.
16. Dr. Brown was of the opinion that Plaintiff has been totally unable to work since his July 5, 2001 injury and that he only gave Plaintiff a medical release to try to return to work in March 2002 based on Plaintiff's strong desire to return to work, observations of Plaintiff's successful return to heavy labor work for approximately 7 years after his 1994 surgery and Plaintiff's very powerful work ethic.
17. Dennis Hoogerman, Ph.D., a licensed psychologist, evaluated Plaintiff after a referral from Plaintiff's counsel. He opined that Plaintiff's intellectual and psychological limitations would create marked limitations on his ability to mentally handle regular work requirements. Dr. Hoogerman's opinion is based on objective testing and evaluations, which the Full Commission finds credible and consistent with other evidence in this matter.
18. Randy Adams, M.Ed., C.V.E., provided a vocational evaluation of Plaintiff. He opined that Plaintiff is vocationally unemployable due to his background, medical and physical limitations. Mr. Adams's opinion on Plaintiff's earning capacity is based on objective testing and a thorough evaluation of job background and medical and psychological findings.
19. Maria King Vargas, a vocational consultant and professional counselor, was retained by Defendants to review Plaintiff's records and give defense counsel a vocational assessment of Plaintiff's employability. Ms. Vargas did not prepare a written report of her findings and conclusions from her vocational assessment. Ms. Vargas was of the opinion that there are jobs Plaintiff could perform such as grocery bagger and light truck driver.
20. Greater weight is given to the opinion of Mr. Adams on Plaintiff's employability than to the opinions of Ms. Vargas.
21. Dr. David DuPuy was of the opinion that Plaintiff obtained a fair to good result from his 1994 surgery, but after the injury in July 2001 and subsequent surgery, Plaintiff had a "failed post-laminectomy result." Dr. DuPuy was of the opinion that Plaintiff could work after the 1994 surgery and after his 2001 surgery. Dr. DuPuy believed that Plaintiff could work a light duty job where he could alternate between sitting and standing, would not have to do repetitive stooping and bending and only be required to lift 25 pounds frequently and up to 35 pounds occasionally.
22. Based on the greater weight of the evidence, the Full Commission finds that while Plaintiff functioned on a low intellectual level, he maintained an ability to work and earn wages after his 1994 surgery, but he has been totally disabled since his July 5, 2001 injury. Greater weight is given to the opinion of Dr. Brown over that of Dr. DuPuy on Plaintiff's ability to work. Although Plaintiff attempted to return to work on March 25, 2002, Dr. Brown opined and the Full Commission so finds that Plaintiff has been totally disabled since his July 5, 2001 injury. Plaintiff's earning upon his return to work from March 25, 2002 through March 28, 2002 were not indicative of his capacity to earn wages in the competitive job market.
23. Dr. Brown's medical release in March 2002 was not based on medical reason, but reflected an emotional desire to help a "straightforward country boy" see if he could regain his earning capacity. Dr. Brown opined that Plaintiff's March 28, 2002 injury contributed to Plaintiff's back condition, which he termed, "irreversible back disease" and Dr. DuPuy called a failed post-laminectomy result. Plaintiff's failed laminectomy occurred following his July 2001 injury and resulting surgery.
24. Plaintiff received unemployment benefits and also short-term disability benefits from a disability plan fully funded by Defendant-Employer in the amount of $235.60 per week from March 28, 2002 until September 29, 2002.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On July 5, 2001 Plaintiff's average weekly wage for the preceding 52 weeks was $593.75, yielding a compensation rate of $395.85. N.C. Gen. Stat. § 97-2(5).
2. On July 5, 2001, Plaintiff suffered an injury by accident arising out of and in the course of his employment as a direct result of a specific traumatic incident of the work assigned by Defendant-Employer. N.C. Gen. Stat. § 97-2(6).
3. The July 5, 2001 injury by accident materially aggravated and accelerated Plaintiff's pre-existing back condition. See Smith v.Champion, 134 N.C. App. 180, 517 S.E.2d 164 (1999); Wilder v. BarbourBoat Works, 84 N.C. App. 188, 352 S.E.2d 690 (1987).
4. Plaintiff's July 5, 2001 injury caused a total loss of wage earning capacity. N.C. Gen. Stat. § 97-29.
5. On March 28, 2002, Plaintiff suffered an injury by accident arising out of and in the course of his employment as a direct result of a specific traumatic incident of the work assigned by Defendant-Employer. N.C. Gen. Stat. § 97-2(6).
6. The March 28, 2002 injury by accident further aggravated Plaintiff's pre-existing back condition. On March 28, 2002, Plaintiff had not regained his wage earning capacity resulting from the July 5, 2001 injury. Plaintiff's actual earnings on the several days he returned to work were not indicative of wage earning capacity. As a result of Plaintiff's July 5, 2001 compensable back injury and the further aggravation on March 28, 2002, Plaintiff is unable to return to work in the competitive labor market. Smith v. Champion, 134 N.C. App. 180, 517 S.E.2d 164 (1999);Wilder v. Barbour Boat Works, 84 N.C. App. 188, 352 S.E.2d 690 (1987).
7. Plaintiff's medical treatment for his back has been reasonably necessary to effect a cure, give relief, or lessen the period of his disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
8. Defendant's defense alleging misrepresentation of material information on Plaintiff's employment application form is given little weight due to Plaintiff's disclosure of his prior back injury and back surgery to the Physician's Assistant at his pre-employment physical exam. Plaintiff's subsequent ability to handle the heavy physical demands of his job with Defendant-Employer for almost seven (7) years demonstrated that his pre-existing back condition did not prevent him from earning wages in the competitive job market. Hooker v. StokesReynolds Hospital, 161 N.C. App. 111, 587 S.E.2d 440 (2003).
9. Defendants are entitled to a credit for short-term disability benefits paid to Plaintiff from a disability plan fully funded by Defendant-Employer in the amount of $235.60 per week from March 28, 2002 until September 29, 2002 and for any unemployment benefits paid to plaintiff as a result of his injury.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff temporary total disability compensation at the weekly rate of $395.85 beginning on July 5, 2001 and continuing until further order of the Commission.
2. Defendants shall pay for all medical expenses and psychological treatment incurred or to be incurred in the future for treatment of Plaintiff's back and his psychological condition so long as such treatment may reasonably be required to effect a cure, give relief and/or lessen Plaintiff's period of disability.
3. Defendant shall reimburse Plaintiff for all proper out-of-pocket expenses incurred for payment of medications and mileage resulting from Plaintiff's July 5, 2001 and March 28, 2002 injuries by accident including expenses related to treatment for depression.
4. Defendants shall receive a credit for unemployment benefits paid to Plaintiff, the wages paid to Plaintiff from March 25-28, 2002 and for short-term disability benefits paid to Plaintiff from a disability plan fully funded by Defendant-Employer in the amount of $235.60 per week from March 28, 2002 until September 29, 2002.
5. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the compensation awarded to Plaintiff herein. Defendants shall deduct 25% of the accrued compensation due Plaintiff and forward this amount directly to Plaintiff's counsel; thereafter, Plaintiff's counsel shall receive every fourth check from the continuing compensation due Plaintiff.
6. Defendants shall bear the costs.
7. Defendants' Motion to Receive Additional Evidence is DENIED.
This the ___ day of January 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER